### LIZZIE SIBLEY

*v.*

### JAPHET SOMERS, executor.

[Filed October 26th, 1901.]

1. A woman about seventy years of age conveyed one-half of her interest in certain property to her granddaughter, reserving to herself its use for life. She was a woman of eccentricities, but capably managed her business affairs. The subscribing witness explained the nature of the deed to her, and had an intelligent explanation from her of her reasons for its execution.—*Held,* valid.

2. And *held, also,* to be a contract presently forceful, and therefore not invalid because not lawfully executed as a will.

3. The instrument is not a conditional sale and is therefore not invalid, because it does not comply with the statutory requirements.

4. The instrument is a gift and not an assignment, and valid, though not based on a valuable consideration.

---

On bill, answer and proofs.

*Mr. George A. Bourgeois,* for the complainant.

*Mr. David J. Pancoast,* for the defendant.

GREY, V. C. (orally).

I have had an opportunity, pending the argument, to examine all of the points which counsel have discussed, and can presently pass upon the questions in dispute as satisfactorily as if they were retained for further consideration.

The bill of complaint in this cause is filed by Lizzie Sibley, a granddaughter of Jane Somers, deceased. As originally filed, Isabel C. Somers, another granddaughter of Jane Somers, was the only defendant. The substantial allegations of the bill are that Jane Somers, for a period of ten years or more prior to her death, was of unsound mind, and unable to transact the ordinary business affairs of life; that, being in that condition of mind, she, on October 30th, 1895, executed an agreement, in writing, purporting to convey one-half of her interest in the estate of Elizabeth Petty, deceased, to Isabel C. Somers. The agreement is then set out, at length, in the bill as follows:

"AGREEMENT.

"Jane Somers,          "Dated October 30th, 1895.
       to              Recorded May 17th, 1897, in agreement
Isabel C. Somers,        Book 4, page 6.

"This agreement witnesseth, that I, Jane Somers, of Scullville, in the County of Atlantic, State of New Jersey, in consideration of the love and affection which I have for my granddaughter, Isabel C. Somers, and for other good and valuable consideration, do hereby bargain, sell, grant, assign, transfer and convey to her an equal one-half interest in and to all my right, demand and interest in the estate of Elizabeth Petty, deceased, including all money, goods, chattels and property of every kind, which I am now or may hereinafter be entitled to from said estate, subject, however, to a lifetime right in the same reserved to myself, the true intent and meaning of this instrument being to give to her the same now, to become hers absolutely at my death, when I am through with the use of it.

"In Witness Whereof, I have hereto set my hand and seal this Thirtieth day of October, A. D. 1895.

her<br>
"Jane   X   Somers.<br>
mark.

"Signed, sealed and delivered in the presence of

"(Signed) Joseph Scull."

The bill further alleges that Isabel C. Somers was frequently, and almost constantly, in company with Jane Somers, and that, by means of false and delusive statements, Isabel unduly influenced Jane to execute the agreement in question, upon merely colorable consideration. It further alleges that Jane had completely lost her power of reason and her mental faculties, and was incapable, in law, of executing such an agreement, either with Isabel or with anybody else. The prayer of the bill is for

answer, &c., without oath, and that the conveyance or agreement in question may be decreed to be null and void against the complainant.

Isabel C. Somers, the defendant, answered the bill, and denied the alleged infirmity, unsoundness of mind and incapacity of her grandmother, Jane Somers; denied the exercise of any undue influence upon her, and averred the truth to be that her grandmother made the agreement voluntarily, without any undue influence.

Pending the suit, the defendant Isabel C. Somers, died testate, appointing her father, Japhet Somers, executor of her will and residuary legatee of her estate. He has been admitted as defendant in this suit, and it has come to a hearing since that time, without any formal answer, or adoption of her answer, on his part. Both the complainant and defendant have treated the answer of Isabel C. Somers as raising the issue on which the cause has been tried. Issue has been joined on it, and testimony taken on that issue. I will follow their action, accepting that answer as the pleading of the defendant on which the case shall be considered, not questioning the *status* of either party.

The bill charges that the agreement is a nullity and void, because of the incapacity of Jane Somers, the grantor in it, and because of the exercise of an undue influence by Isabel C. Somers, the grantee, to obtain it. It may just as well be stated at the beginning that there is no evidence in the cause which would support a decree that any influence, undue or otherwise, was exercised by Isabel C. Somers, as is alleged and charged in the bill. The testimony of the complainant's own witnesses tends to prove that Isabel was rarely in attendance on her grandmother, and no proof whatever was offered to show that she, in any way, induced the making of the disputed contract.

The testimony offered has been directed almost wholly to an effort to prove that Mrs. Jane Somers was a lunatic, incapable of making any contract whatever, not only at the time she made this agreement, but that for years before she had been so mentally deranged as to be incapable of transacting any business.

The proofs do show that there were many times that Mrs. Somers did odd and eccentric things, but the complainant's own witnesses who narrated these incidents, testified that they

dealt with her again and again, in the ordinary affairs of life, in buying and selling and making and executing contracts. Her dealings, it is true, were of trifling character, because her circumstances were limited, and her situation in life such that she had no occasion for large transactions. She sold cakes and milk, and the very persons who declared that she was mentally incapable, testified that they bought cakes and milk of her, and that the greater the quantity of cakes and milk which they got, the greater was the price fixed by her. Other persons testified that they sold things to her, in the ordinary and usual course of business, during periods of weeks at a time, naming the articles sold to her. There is no evidence whatever that any of the people, who were associated with her, ever attempted to control her in the management of her affairs, or in the disposition of her property, or to prevent others from dealing with her, or to assume any care over her actions. She conducted her own business and managed her little transactions during a long life, displaying all the oddities of behavior noted, yet nobody ever did any act or made any suggestion indicating a belief in her mental incapacity. It is quite evident that she was, for a very considerable part of her life, a woman of very eccentric habits in some particulars; but, except in one instance of the purchase of an extravagant quantity of tinware (which, in the searching examination that has been made of her life for a period of sixty or seventy years, is the only one), there seems to have been no proof whatever of improvident or foolish bargains. On the other hand, there is evidence that she carefully secluded that part of the house in which she kept her money, and would not let anybody go into it; that she violently abused the tax collector, because she thought she was unduly charged; that she seemed to have an extremely keen sense of property, and that whenever there was any occasion to repel any intrusion upon her, or upon her rights, or her property, she was quite ready to do it. These incidents are all forceful to show that she had abundant mentality to transact business.

There is evidence of eccentricity in dress, and also of that sort of forgetfulness which attends old age and leads to the doing of things over and over again. Persons whom she ought, under ordinary circumstances, to have instantly recognized, she was

unable to recall, but the witnesses who give this testimony also show that the moment an appeal was made to her to identify them, she almost instantly recognized them, correctly recalling their personality, knowing who they were and dealing with them, in their true character. Failure of recognition, especially in old people, is one of the commonest things of life.

Such failure, unless complete and unchanging, merely shows temporary lack of memory, and is no evidence of mental derangement.

Another eccentricity in her housekeeping was that she sometimes forgot that she had once sufficiently washed her dishes, and repeatedly washed them. This eccentricity is of the same class as the temporary failure to recognize acquaintances. All these incidents alleged to show insanity are here gathered together and presented as if they were all continuing characteristics of Mrs. Somers, but, in fact, as the evidence shows, they were oddities in conduct which she exhibited at various times during her long life. None of them are fixed as characteristics of the period when the instrument in question, the contract with the defendant, was made, which was about October 30th, 1895. None were in her lifetime deemed to be evidential of mental derangement.

The proof offered on the part of the defendant of what took place on the occasion of the making of the challenged agreement is absolutely uncontradicted. Nobody even attempts to prove that, at that time, Mrs. Somers gave evidence of lunacy, or even of the eccentricities which she occasionally displayed. Judge Scull, the subscribing witness to the agreement, an entirely disinterested and capable person, attended this old lady on this occasion. He explained to her the nature of the instrument, read it to her, witnessed her signature, and had from her an explanation of the reasons why she made it. These reasons are shown to be such that they might readily and properly have operated upon Mrs. Somers to induce her to make it. The instrument is then shown to have been carried by Japhet, Mrs. Somers' son, at her request, to his daughter, Isabel, the grantee in the agreement. It was then sent to Newark, for use in securing the estate of Mrs. Petty, and afterwards came to the counsel of Isabel C. Somers, who filed her answer in this cause. It was obviously treated by all the parties, with Mrs. Somers' assent, as

a finally completed transaction. There is no evidence which supports the allegation that Mrs. Somers was mentally incapable when she made the agreement in question.

Upon the argument the counsel for the complainant sought to introduce a new element into the case, not raised by the pleadings. He contends that the agreement shows, on its face, that it is a will, and not a contract. That contention is directly contrary to the allegations of the bill of complaint. The bill recognizes the contract as presently forceful, and asks this court to declare it to be void, on the ground that it was obtained to be made by undue influence exerted upon the grantor, who was a person mentally incapable of executing it. Nothing in the bill intimates that the contract could only operate as a will. If, in fact, it could operate only as a will, it is obviously inefficient, because it was not lawfully executed as a will. An attack upon it on this ground suggests no fraudulent contrivance and ought to have been brought in the law courts, by Mrs. Somers' administrator, claiming the property sought to be passed by it.

I doubt whether I ought to consider this argument. If I did, I should overrule it. The difference between a will and the operation of such a contract as is here attacked is perfectly clear. A will has no obligatory effect until the death of the testator, but this contract, by the very terms expressed on its face, passed title on its delivery. The words used are those of present conveyance. The grantor gives the property *"now."* The thing given, an interest in an estate as distributee, was incapable of manual delivery. The grantor reserved to herself a life enjoyment in the property given, but, subject to that life interest, title passed from the grantor to the grantee, irrevocably, on the delivery of the instrument. If the argument made by complainant's counsel were within the issues joined, it could not be determined in the complainant's favor.

The same answer should be made to the contention of the complainant that the contract was a conditional sale, which does not comply with the terms of the statute. It is quite obvious that it does not operate as a sale. The inducements which led Mrs. Somers to make it were not those of bargain and purchase, but those of love and affection which arise in the family relation. These, and not money considerations, led her to make this gift,

passing title to her granddaughter, because she was fond of her, for services and kindnesses which she had received at her hands. It was a binding contract between the parties to it from the time of the delivery. Only creditors could impeach it.

Another suggestion by complainant is that the contract was not a gift, but an assignment, and that there was no consideration for it; that equity will not aid such assignments, unless there be a valuable consideration. This contention is also outside of the issues joined in this cause. The instrument, and all its attending circumstances, show that the transaction was a gift, based wholly upon the consideration of love and affection, and not upon a valuable one. It is complete in itself, and does not need equitable aid to perfect it.

I have passed upon all the points that counsel for the complainant has suggested as grounds upon which the complainant's bill should receive favorable consideration. None are sufficient to support a decree. The bill should be dismissed, with costs.