The complainant conveyed his house and lot, 107 Murray street, Newark, New Jersey, to the defendant "Paul G. Roder, trustee," who declared the trust in writing, duly recorded, that he would, upon the death of the complainant, convey the premises to complainant's two married daughters, the complainant to have the rents, issues and profits for life; with power in the trustee to convey or mortgage the premises if in his judgment it was for the best interest of the complainant. Two months later, August 26th, 1932, the complainant and Roder, trustee, conveyed the premises to Roder and the two daughters, reserving to the complainant the right to live in the premises, and contemporaneously the grantees executed an agreement, unrecorded, allowing the complainant to live in the premises and to have the usufruct for life. The property is subject to a $2,600 mortgage and there is little or no yield. *Page 290 
The complainant is approaching seventy years of age, is mentally and physically infirm, a victim of cerebral arteriosclerosis. By the conveyances he stripped himself of all he had. He is unable to work and presently is dependent on municipal charity. He seeks to set aside the conveyances on the ground that they were obtained by fraud and imposition, and that they were voluntary, improvident, and made without the benefit of independent advice.
The charges of fraud and imposition are without foundation and the complainant's testimony that he was imposed upon by Roder and the daughters is untrue, and to his knowledge. The deeds were the concept of the complainant, unsought by the defendants. The complainant acquired title through the will of his wife, who died in 1930. In the latter part of 1931, Mrs. White, now his wife, struck his fancy and he let her into his second story apartment of the premises. They claim to have contracted a common law marriage in March of 1932. In September following they were ceremonially married. His relation with Mrs. White caused him anxiety and worry, so he represented, and he took his troubles to Mr. Roder, his lawyer, to whom he denounced her as evil and designing and that he feared she would sue him for breach of promise and take his property. He appealed to Mr. Roder to take over the property in trust to convey it to his daughters at his death, professing a moral obligation to give it to them because of his promise to his late and lamented wife that they should have it at his death. The daughters knew nothing of the deed. Later, to assure them that they were the owners of the property, he took them to Mr. Roder's office the day the second deed was executed and it was at his urgent request and to further secure himself against Mrs. White and her wiles that the second deed was made outright to the daughters and to Mr. Roder. He became a grantee, upon the insistence of the complainant, as a check upon the sale of the property by the daughters, and for that purpose only. To Mr. Roder, the complainant's apparent attitude toward Mrs. White was hostile and apprehensive of her threatened mischief, enlisting his sympathy and a sense of *Page 291 
duty to protect the decrepit old man from the snares of a crafty woman, as he was led to believe. She had by this time wheedled from the complainant, as he claimed, two "loans," one of $800, the other $400 raised by the $2,500 mortgage now on the premises, and to Roder and the daughters his predicament and his fears that Mrs. White would entrap him into marriage or sue him for breach of promise seemed real. To all appearances, he sought escape from Mrs. White and even after they had applied for a marriage license he appealed to Mr. Roder to extricate him, and he stayed the issuing of the license for two days. Instability is a characteristic of the disease from which he suffers, so the physician testified, and to this he added gullibility and "a curious mixture of suggestibility and stubbornness."
While there is no doubt that the complainant instigated the deeds and that he understood their meaning and self-serving purpose, and though his testimony of undue influence and imposition is unworthy of belief, the deeds must be set aside. Granting that the complainant was well aware of what was happening and that Mr. Roder was at pains to fully inform him, he did not have the all important and essential advice of the improvidence of his act and the dire consequences that might befall him, viz.: the very condition in which he now finds himself — a public charge. He himself did not perceive it and Mr. Roder admits he did not speak of the possible tragedy. Had he, it would not have met the law's requirement of independent advice, for Mr. Roder was not disinterested. The rule is well settled in this state that the improvidence of the aged and infirm in voluntarily stripping themselves of all they possess will not be permitted to stand unless they have independent advice, by competent and disinterested counsel, of all the possible consequences of their acts. The purpose of the rule, as stated by Chief-Justice Gummere in Slack v. Rees, 66 N.J. Eq. 447, "is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship *Page 292 
between them, the effect of which, upon his own interests, he may only partially understand or appreciate." The principle is controlling. The cases are gathered in Vice-Chancellor Buchanan's opinion in In re Fulper, 99 N.J. Eq. 293.
We cannot withhold relief because, as it is claimed, Mrs. White-Diebold is set upon getting the property and, surrendering it, the complainant may find himself in a worse position than now. That may be his second folly. Our duty is discharged by giving the relief now called for.
The complainant is entitled to a decree.