41 N.J. Super. 474 (1956)
125 A.2d 427
MARY PODKOWICZ, ALSO KNOWN AS MARY POTKOWICZ, PLAINTIFF,
v.
JOHN SLOWINESKI AND VERONICA SLOWINESKI, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 14, 1956.
*477 Mr. Laurence Semel, attorney for plaintiff.
Mr. Irwin Goldfinger, attorney for defendants.
DREWEN, J.C.C. (temporarily assigned).
Plaintiff is a woman 91 years of age. She is in a good state of health for one of her years. Mentally she appears to be strong-willed and normally perceptive. At the time of the transaction in question she was possessed of some $5,000 in cash. Defendants and their children, a family of five in all, were at the time living in a few rooms in a modest flat in the downtown section of the city of Newark. Plaintiff was well-acquainted with defendants and was in the habit of visiting them. Plaintiff had observed that defendants' quarters were cramped and she discussed that condition with them, ultimately suggesting that defendants purchase a house so as to have more living room. Defendants explained to her that they were prohibited from following plaintiff's suggestion by a drastic lack of funds, that such a step was impossible however welcome would be the relief of adequate living quarters. Following this juncture in the discussions plaintiff offered to advance to defendants the sum of $4,000 toward the purchase of a home, a sum which they might use as a down payment, giving a mortgage for the balance of the purchase price. Plaintiff offered to assist the defendants in the manner indicated if they would provide a home for her in the quarters to be purchased. Defendants agreed. A number of properties were looked at by plaintiff and defendants together, with a view to carrying out their joint purpose. They finally selected the property at No. 79 South Clinton Street, East Orange, which defendants purchased. The agreed sum was advanced by plaintiff and paid as part *478 of the purchase price; a mortgage for approximately $10,000 was given in addition by the defendants.
After the defendants had come to terms with the seller of the property they brought plaintiff to the office of their attorney (who represents them in the present action) with a view to having him act for them in the title closing. The defendants and plaintiff stated to the attorney the full details of the agreement they had arrived at, as above outlined. The attorney thereupon caused the contract to be reduced in due form to writing and to be executed by the parties. It is as follows:
"THIS AGREEMENT, made this 28th day of December, 1954, by and between John Slowineski and Veronica Slowineski, parties of the first part, and Mary Potkowicz, party of the second part, WITNESSETH:
WHEREAS, the party of the second part is 91 years of age and requires attention for her care and maintenance and whereas the party of the second part desires to live with the party of the first part, and whereas the party of the first part desires to take care of the said party of the second part for the balance of her natural life, NOW THEREFORE, for and in consideration of the premises and the sum of $1.00 to each of the parties in hand paid by the other the receipt whereof is hereby acknowledged, the parties agree as follows:
1. Party of the first part acknowledges receipt from the party of the second part of the sum of $1,000 which represents the deposit for contract for purchase of property at 79 South Clinton Street, East Orange, New Jersey.
2. The party of the second part agrees to give to the party of the first part an additional sum of $3,000 to be used as the down payment on the above property at the time of taking of title.
3. The party of the first part agrees that they will furnish a home and a private room in the above premises to the party of the second part during the balance of her natural life and will supply her with all food, heat, light, and accommodations in the said premises together with all medical expenses necessary.
4. The parties of the first part further agree that upon her death they will pay all funeral expenses.
5. It is understood by and between the parties that the payment to the parties of the first part of the said $4,000 shall be the consideration for the promises of the parties of the first part to carry out the terms of this contract and also the furnishing of the items above listed. There shall not be any obligation on the part of the parties of the first part to repay all or any part of the said *479 $4,000 either to the party of the second part or to her heirs, administrators, executors or assigns at any time in the future.
6. This agreement shall take effect as of the date hereof and the obligation to pay the additional $3,000 shall be a continuing one on the part of the party of the second part, her heirs, executors, administrators or assigns. In the event of the death of the party of the second part prior to the payment of the said $3,000 the said sum shall become immediately due and payable to the parties of the first part by the executor or administrator of the estate of the party of the second part and shall have precedence over any and all bequests or inheritance in the estate of the party of the second part.
IN WITNESS the parties have hereunto set their hands and seals the day and year first above written.
 s/ JOHN SLOWINESKI (L.S.)
 s/ VERONICA SLOWINESKI (L.S.)
 s/ HER MARK  MARY POTKOWICZ (L.S.)
Signed, sealed and delivered in the presence of
 s/ IRWIN GOLDFINGER.
The following is to be added to and become part of the foregoing contract.
The parties of the first part agree that in the event that they shall both predecease the party of the second part, any monies given by the party of the second part to the parties of the first part shall be returned to her in full by the estate and the heirs of the parties of the first part if the children of the parties of the first part refuse to carry out all of the terms of this contract.
 s/ s/ JOHN SLOWINESKI (L.S.)
 HER MARK
 MARY POTKOWICZ s/ VERONICA SLOWINESKI (L.S.)"
In due course defendants took title to the South Clinton Street property and plaintiff, with defendants and their family, moved into the premises. For a brief time all went well, in keeping with the terms and spirit of the agreement, until plaintiff left the home, remaining away therefrom continuously ever since. The chief factual issue in the case is what occurred to cause plaintiff's departure. She says that defendants and their grown son had become abusive, making threats of one kind or another; that oppressive and intolerable language had been used to her, including the charge that she was a drunkard. Plaintiff urges further that when defendants knew she still had $1,000 in cash remaining they tried to induce her to advance that sum to them also, failing which they turned against her in the *480 manner stated. During the course of the trial mention was made of the availability of another witness who could substantiate plaintiff's claim as to the manner and cause of her leaving defendants' home, but such a witness has not materialized and plaintiff's testimony is all there is on her side of the question.
Both defendants and their son deny in toto what plaintiff says in this regard. Their testimony is that when plaintiff left they were aware of no reason for her doing so, save only what plaintiff had told them, which was that she was going away for a short visit. They testify that they expected her prompt return and were unable to account for her continued absence, which concerned them; that there had been no friction or discord between them, no more than a difference of opinion as to what and where certain things should be planted in the garden. Defendants' son expressly denies that there had been trouble or unpleasantness between him and plaintiff at any time.
It is my conclusion, from a careful consideration of all the proofs and the impression made upon me by each of the parties themselves, that plaintiff had no good or adequate reason to leave the home defendants had provided for her. What the evidence clearly shows to me is that there was a minor difference between plaintiff and the defendant husband concerning the planting of beans in a portion of the garden, instead of flowers, and that when plaintiff did not get her own way in this she felt a resentment, not revealed by her to defendants at the time, but which acted so strongly upon her as to be expressed by her leaving in the manner she did. Defendants profess a genuine attachment for the plaintiff, state that they continue to be grateful to her for the assistance given in the procurement of adequate living quarters and that they truly wish her to return to her agreed place in their home. In the course of the trial they personally importuned her to return but met with strong refusal on plaintiff's part. In all of this I believe and adjudge defendants to be entirely honest and sincere.
*481 Defendants are both in early middle-age and are competent in the given circumstances to provide the support and lodging that their agreement calls for. The husband is an automobile mechanic and regularly earns the wages payable to one of that trade. His wife is keeper of the home. Since acquiring the property on or about December 28, 1954, they have been making payments on the mortgage of approximately $110 per month to cover interest, amortization and taxes.
It is contended for the plaintiff that the contract is void. The court is asked to so adjudge and to impress the property with a trust in plaintiff's favor for the sum she advanced for its purchase. Reliance is had on the familiar line of decisions which maintain the principle that a deed or other gift by one aged and infirm is void when the donor is impoverished thereby and when the action of the donor in making the deed or gift has been taken without independent advice. Mott v. Mott, 49 N.J. Eq. 192 (Ch. 1891); Sibley v. Somers, 62 N.J. Eq. 595 (Ch. 1901); Slack v. Rees, 66 N.J. Eq. 447 (E. & A. 1903); In re Fulper's Estate, 99 N.J. Eq. 293 (Prerog. 1926); Diebold v. Roder, 117 N.J. Eq. 289 (Ch. 1934); Blake v. Brennan, 1 N.J. Super. 446 (Ch. 1948); Collum v. Deane, 6 N.J. Super. 243 (App. Div. 1950).
Granted that the stated rule is adamant in situations in which it is designed to apply, I think the facts here are readily distinguishable and that the case before us is not within the doctrine stated. Let it be admitted also that under the requirement of independent advice as that requirement is declared in the decisions set forth, technically there was none. But an essential point of distinction here, I think, is that plaintiff has suffered no impoverishment. What she did, for all that appears, was to provide herself with maintenance and support for the rest of her days. Her advancing of the money and the use to which it was put were a means of gaining a valuable, not to say indispensable, property for herself, actually and beneficially, as much so as if she had taken title to the premises in her own name. *482 The house that was selected for the carrying out of the agreement had to be large enough to suit not only the needs of defendants and their family but also that of the plaintiff as their boarder and lodger, and defendants have been making monthly payments ever since upon a property whose cost was commensurate with the latter added requirement. Another essential point of distinction is that undue influence is not in the case. I find the fact to be that from first to last the defendants in their acquisition of the property were entirely passive to plaintiff's furtherance.
The fact that plaintiff renounces wrongfully, and without legal warrant as I find, the valuable benefits that her transaction provides for her does not justify the abatement of such benefits as factors in the cause before us. The defendants, according to my judgment of the proofs, are ready, willing and able to resume and continue performance of the contract. They invite plaintiff to return to her place in their domestic abode as they have agreed to provide it. Let it be repeated that for no valid reason the plaintiff declines. True, the carrying out of a contract to provide support and lodging in the circumstances that are inherent in the situation by which the parties must be governed in such a case, conceivably calls for an uncommon measure of patience, adaptability and accord on all sides. Countless contractual relations are capable of the same or similar exaction, but that does not, as I see it, make the contract any the less valid and enforceable; certainly it does not disqualify it from legal recognition.
Each of these parties has, at the instance of the other, acquired a benefit and incurred a burden. Under the circumstances, I think it would be a clear violation of equity for the court, on the facts before it, to undo the bargain, thus gravely compounding defendants' burden by reason of what is simply the plaintiff's breach. The granting of what plaintiff asks would be, in my opinion, a drastic and unauthorized extension of the doctrine laid down in the decisions on the subject.
*483 A further contrast between the instant case and the contrary decisions is indicated in the opinion of the court in Mott v. Mott, supra. There it was said:
"It is also a fraud, where the only consideration for the deed is an agreement on the part of the son to support the mother, not to give to the parent an instrument, of equal solemnity with that which he receives from her, expressing such consideration."
In Sibley v. Somers, supra, the court observes that the donor in that case gave reasons for her making the gift that might readily and properly have induced her to do so. In the situation sub judice adequate reasons for what the plaintiff did are manifest.
In Blake v. Brennan, supra, it was held by Jayne, J.S.C., that the test of a confidential relation is whether a relation between the parties was of such a character of trust and confidence as to render it reasonably certain that the one party (grantee) occupied a dominant position over the other (grantor) and that consequently they did not deal on terms and conditions of equality; that it is where such a confidential relation exists that the rule requires independent, competent and impartial advice, but that where such relation is not evidentially shown there must be some proof of actual fraud in order to nullify the transfers. Judge Jayne held that the plaintiff in the case before him did not sustain the burden of proving either the existence of confidential relation or actual fraud. I think that in the instant case a parallel situation is presented.
The complaint is dismissed.