This bill is filed to set aside a conveyance made by Joseph Lieber to his wife, Mary Lieber, on July 20th, 1931, four days before his death which occurred on July 24th, 1931, at the age of sixty-seven years. His last illness covered a period of nearly two years, the last several months of which he was practically helpless.
The deed stripped him of everything he had and deprived his nine children by a former marriage of participation in his estate. The progress of the disease from which he suffered caused his physical powers to become gradually weakened, and from the evidence before me there is no doubt that his mental powers were affected, although perhaps not to the extent of where he did not retain what would be regarded as sufficient mental capacity to dispose of his property. The wife gave him every care and attention and was constantly with him. Complainant, as well as her brother and sisters, when they called at the sick room were not afforded the opportunity to see their father alone; the wife was always present. It is in the case that there was some feeling between the father and his children because of the second marriage and that at least one of the children, if not entirely forbidden to call, was unwelcome at the father's home.
A daughter of the wife by a previous marriage, a Mrs. Raff, testified that on Sunday, July 19th, she received word from her mother that the deceased wanted to see her. When she arrived she was told by deceased in the absence of the wife, *Page 572 
that he desired a lawyer and that he wanted to deed his property to the wife. The following day, July 20th, Mr. Franzblau, a lawyer, together with Mr. Ganzler, another member of the bar associated with him, called at the home. The wife and her daughter, Mrs. Raff, were present. The lawyers, the deceased and Mrs. Raff went in a bedroom. Evidently the appearance and actions of the deceased, due to his illness were such that Franzblau, who came prepared with a blank to draw a deed and paper to draw a will became alarmed, for he called Doctor Polevski, attending physician on the phone to request his presence when the instrument was signed. Having received assurance, the lawyer drew the deed. Franzblau's testimony was that he tried to persuade the deceased to make a will which he refused to do. The deed prepared, the deceased signed by mark, although he could write but was too weak to do so. After its execution it was immediately put on record. The wife said she saw the lawyers and her daughter there for some time, and that they went in and out of the sick room several times, but that she did not know what was going on.
The deed conveyed all the deceased possessed. Franzblau was not the lawyer of the deceased, but had theretofore transacted some legal business for Mrs. Raff and her husband. He says that he took the donor's acknowledgment and that he was very careful in doing so. It does not appear in the evidence that he advised the deceased of its effect and consequences. After the funeral Mr. Waldman, a lawyer and son-in-law of the deceased, called at the home of the widow to inquire whether the deceased had left a will. The wife and Mrs. Raff invited him to look through the effects of the deceased. After he had spent some time in rummaging through the papers and effects, Mrs. Raff told him that it was useless to look further since a deed for the property had been made to her mother. Strangely enough the donee in her testimony insists that she learned for the first time of the deed when Mrs. Raff made this statement to Waldman. She says that although she sent for her daughter at the request of her husband to come there that she did not know that her *Page 573 
husband wished Mrs. Raff to get a lawyer for him or that a deed was prepared or had ever been made to her.
During the course of the trial the donee's daughter, Mrs. Raff, sat at the counsel table and by suggestion to counsel from time to time actively engaged in the defense of the cause.
The deceased, by the deed, impoverished himself in that he conveyed all that he had, and before the law will permit it to stand, it must be shown that he understood, was not unfairly influenced and that he was independently and competently advised of the nature of the act and of its consequences. The lawyer who drew the deed was Mrs. Raff's lawyer. The deceased was not advised of the act and of its consequences. Mr. Schild, a witness, testified that some days before the deed was executed, the deceased advised with him and that he told deceased that he ought to deed the property to his wife. Schild is not a lawyer and his "advice" does not meet the standard fixed by the law in cases of this kind. By proper independent advice we mean that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidentially as to the consequences to himself of his proposed benefaction. Reeves v. White, 84 N.J. Eq. 661.
That kind of independent advice the donor did not receive either from Schild or the attorney Franzblau. It has been frequently pointed out in our decisions that the normal relationship of husband and wife in which the husband is the dominant party before illness and disability, may thereafter, over a long period of illness become reversed, so that the wife in fact becomes the confidant, guardian and protector of the husband.
I am satisfied that such a change from normalcy took place. The husband for sometime prior to his death was entirely dependent upon the wife, not only for physical care, but in the conduct of a small "junk" business which was located in the rear of his premises. The testimony showed him to be *Page 574 
practically helpless for a considerable period prior to his death. In such a situation the burden of proof is thrown upon the person in whom the confidence is reposed, and who has acquired an advantage, to show affirmatively not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood.Slack v. Rees, 66 N.J. Eq. 447; McCambridge v. Daly,109 N.J. Eq. 43; Kelly v. Kelly, 107 N.J. Eq. 483. That burden has not been sustained.
The deceased and his children had become estranged. Their claim to the estate rests solely upon their blood relationship. There is some evidence on the part of the wife that a portion of her saving prior to her marriage (the exact amount is vague), was contributed by her to the husband at the time of the purchase of the property in question. It would be inequitable were the heirs to have the benefit of a decree setting aside the deed without the return to the wife of the sum invested. The error of the donor should not stand in the way. An opportunity will be afforded the wife to make proof of the amount so invested by an order of reference to a master to take testimony for that purpose. Upon the coming in of the report fixing the amount, the complainant and the remainder of the next of kin will, in the decree setting aside the deed, be decreed to pay the amount.