HENRY SEYLAZ, ET AL., PLAINTIFFS-APPELLANTS, v. IDA SUTPHEN BENNETT, ET AL., DEFENDANTS-RESPONDENTS.

Argued June 12, 1950—Decided June 27, 1950.

*Mr. Abram A. Golden* argued the cause for appellants.

*Mr. Irving Siegler* argued the cause for respondents (*Mr. Michael Breitkopf,* attorney).

The opinion of the court was delivered by

WACHENFELD, J.   The administrator with the will annexed of the estate of Louis Seylaz, and others, instituted an action to set aside a conveyance made by Seylaz a short time before his death in 1945 and to recover the sum of $2,903.75, part of the proceeds of the sale by him of other real property. The grantee in the deed complained of was Ida Sutphen Bennett,

Seylaz's housekeeper, who was the defendant named in the original bill of complaint. She died while the action was pending and her sons, William and Russell Jaques, individually, and William as the executor of her estate, were substituted as defendants by leave of the court.

Seylaz was a widower, his wife having died in 1922. Mrs. Bennett, separated from her husband, was a friend of long standing. The closeness and confidential nature of the relationship is indicated in part by the fact he made a will, his last, in 1932 in which he gave her a life estate in his entire estate and further by a visit they made together to the Chicago World's Fair in 1933.

In 1935, Seylaz asked Mrs. Bennett to live in his house in Irvington and to act as his housekeeper. She assented and lived there until he died at the age of eighty-six.

Seylaz sold real estate owned by him on St. Paul Avenue in Newark in May, 1944. Part of the purchase price was paid by a check for $2,903.75 which he endorsed over to Mrs. Bennett, who in turn deposited it in her account in the Irvington National Bank and made certain withdrawals against it which will be particularized hereafter.

Later that same year, Seylaz conveyed to Mrs. Bennett in fee simple the house in which they lived and the surrounding land. The deed was prepared by her attorney who also drew a will for Mrs. Bennett devising the premises to Seylaz in the event she predeceased him. The will was executed immediately upon the execution of the deed.

Seylaz died May 1, 1945, and his administrator with the will annexed, together with the beneficiaries under the will, brought this action to set aside the conveyance and to recover the sum of $2,903.75 given to Mrs. Bennett, alleging that at the time of both transactions Seylaz was aged, senile, unable to comprehend the nature and effect of his actions, did not have the advice of disinterested and competent counsel and was under the complete domination and control of Mrs. Bennett, who exercised undue influence and duress upon him in order to perpetrate a fraud.

Some nineteen witnesses testified as to the mental and physical condition of Seylaz during the last year of his life and to the relationship between him and Mrs. Bennett. The then Vice-Chancellor who heard the case found as a fact that Seylaz was of sound mind all during this period and fully understood and intended the results of the actions complained of. He found, moreover, Seylaz could and did manage and control his business affairs independently and the relationship was that of two old people each dependent in considerable degree upon the other for care and companionship but with neither one dominating or controlling the other. On this finding, a decree was entered dismissing the. complaint in so far as it sought to have the conveyance set aside.

As to the $2,903.75 which Mrs. Bennett received from Seylaz, the court below found $600 of it was owed by him to her, a debt evidenced by a promissory note of which he was the maker and she the payee. Other credits totalling $1,220 were allowed her estate for payments she had made out of the fund, prior to Seylaz's death, for taxes, a lawyer's fee and roof repairs and, subsequently, for his funeral expenses. The decree charged her estate with the balance, $1,083.75.

The complainants below appeal and the respondents cross-appeal from that part of the decree which charged Mrs. Bennett's estate with the balance of the fund.

The appellants urge the reversal of the decree below on the ground that Seylaz was unable fully to comprehend the nature and effect of the gifts made to Mrs. Bennett.

■ ■ Where a person, enfeebled in mind by age or disease and so placed as to be likely to be subjected to the influence of another, makes a voluntary disposition of property in favor of that person, the burden is upon the recipient to prove the donor understood the nature of the act and that it was not done through the influence of the donee. The presumption against the validity of a gift is not limited to those instances where the relation of parent and child, guardian and ward or husband and wife exists but arises in every instance where the relation between donor and donee is one in which the latter

has acquired a dominant position. *Haydock v. Haydock*, 34 *N. J. Eq.* 570 (*E. & A.* 1881).

■■ When a person under the influence of and dependent upon another makes an improvident gift to the other stripping himself of virtually all his assets, a presumption of undue influence will arise from the facts and the gift will be declared invalid unless the donor has had the benefit of competent and disinterested counsel and it is shown he fully understood and intended the consequences of his act. *Slack v. Rees*, 66 *N. J. Eq.* 447 (*E. & A.* 1903); *Post v. Hagan*, 71 *N. J. Eq.* 234 (*E. & A.* 1906); *Colgan v. Allen*, 110 *N. J. Eq.* 451 (*E. & A.* 1932); *Gross v. Lieber*, 112 *N. J. Eq.* 570 (*Ch.* 1933); *Croker v. Clegg*, 123 *N. J. Eq.* 332 (*E. & A.* 1937); *Oswald v. Seidler*, 136 *N. J. Eq.* 443 (*E. & A.* 1945); *Vanderbach v. Vollinger*, 1 *N. J.* 481 (1949). When the donee is the dominant partner in the relationship, the burden is upon him to show by clear and convincing proof the gift was the voluntary and intelligent act of the donor. *Baur v. Cron*, 71 *N. J. Eq.* 743 (*E. & A.* 1906).

■■ The situation is quite different, however, when there is no evidence that the donor is dependent upon or servient to the donee. In such case, independent advice is not a prerequisite to the validity of an improvident gift even though the relationship between the parties is one of trust and confidence. *James v. Aller*, 68 *N. J. Eq.* 666 (*E. & A.* 1905); *Farley, et al., v. First Camden National Bank & Trust Co.*, 107 *N. J. Eq.* 272 (*Ch.* 1930); *Chandler v. Hardgrove*, 124 *N. J. Eq.* 516 (*Ch.* 1938); *Griffiths v. Griffiths*, 142 *N. J. Eq.* 751 (*E. & A.* 1948). If it appears the donee was not the dominant party in the relationship, then the presumption is in favor of the validity of the gift and the complainant has the burden of proving circumstances which make it voidable. *In re Fulper*, 99 *N. J. Eq.* 293 (*Prerog.* 1926); *Dill v. Dill*, 118 *N. J. Eq.* 374 (*Ch.* 1935); affirmed, 119 *N. J. Eq.* 467 (*E. & A.* 1936).

The evidence in the present case does not suggest Mrs. Bennett in any way dominated or controlled Seylaz. The finding

of the court below that he was of sound mind and was able to, and did, manage his own business affairs is amply supported by the testimony of the witnesses. He drove his own automobile until late in 1944, when he sold it. The real estate agent who conducted the sale of the St. Paul Avenue property in May, 1944, testified to his dealings with Seylaz and in particular to a conversation between them wherein he told of an offer received for the property higher than the one Seylaz had accepted. The latter rejected the offer, stating firmly he had given his word to sell at the lower price, that his word was good and he would honor it.

It is true Seylaz did not consult an attorney of his own choosing when he made the conveyance to Mrs. Bennett here complained of. Mrs. Bennett's attorney had drawn up the deed and presented it to him for his signature. At the attorney's request, however, Mrs. Bennett left the room while he explained to Seylaz the effect of the deed and the fact that once it was signed Mrs. Bennett could put him out of the house if she so desired. After the explanation, Seylaz said: "I want her to have it. I know what I am doing. She has taken good care of me."

There is nothing in the record to suggest the conveyance was other than a voluntary and fully comprehended act carrying out the rational and considered intent of the grantor. Mrs. Bennett had been his constant companion for many years. She had performed the duties of a housekeeper, had cared for and nursed him through several illnesses, without wages or remuneration. It was natural and completely understandable that, under these circumstances, he, in his declining years, should be moved to endeavor to provide for her future security by conveying to her the house which had been their residence for so long. Close association, constant thoughtfulness and consideration and the services rendered, made her a natural object of his bounty.

Their mutual dependence and desire to provide for each other is further indicated by the will she made at the time the deed was executed leaving the house to him in the event

of her prior death. The relationship between them, though confidential, was not one in which she dominated his will or controlled his acts and the proof clearly shows he fully understood the effect and intended the result of his action in making the conveyance. In these circumstances, the gift will be upheld even in the absence of disinterested, independent advice.

The final decree in this action was dated June 7, 1948, and was filed in the clerk's office four days later. Notice of appeal was filed on September 8th and the defendants' notice of cross-appeal bearing the date of September 29th was not filed until October 22, 1948. *R. S.* 2:29–119, in effect at the time, provided that all appeals from final decrees should be taken within three months after the filing of such decrees unless an extension of time not to exceed thirty days was granted by the Chancellor. The record shows no application for or the granting of such an extension.

The appellant moved to dismiss the cross-appeal on the ground it had not been filed within the time allowed by the statute then prevailing. The motion was held to be considered and disposed of with the main appeal. The record certifies the cross-appeal was not taken within time and the motion to dismiss is therefore granted.

The judgment is affirmed, but without costs.

*For affirmance*—Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For reversal*—None.