18 N.J. Super. 458 (1952)
87 A.2d 448
AUGUSTA NAIDECH EISENBERG, PLAINTIFF-APPELLANT,
v.
HENRY FINSTON AND IDA FINSTON, HIS WIFE, AND DAVID NAIDECH AND FRANCES NAIDECH, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1952.
Decided March 24, 1952.
*461 Before Judges JACOBS, EASTWOOD and FREUND.
Mr. Aaron Gordon argued the cause for the plaintiff-appellant (Mr. John W. Ockford, attorney).
Mr. Joseph H. Lerner argued the cause for the defendants-respondents.
The opinion of the court was delivered by EASTWOOD, J.A.D.
Hyman Naidech died in October, 1929, leaving to his widow, plaintiff in this action, certain real property and a business operating under the name of New Jersey Coal and Supply Company, located at Nutley, New Jersey. On October 15, 1931, the business was incorporated under the aforementioned name and Mrs. Augusta Naidech (now Eisenberg) controlled 80 per cent of the stock, with other qualifying shares of stock being issued to some of the defendants. The plaintiff is the mother of Ida Finston and David Naidech, and Henry Finston is the nephew of the plaintiff and husband of Ida, one of the named defendants.
Subsequently, on June 24, 1937, the corporation was dissolved and the business run as a partnership by the plaintiff and the defendants, Henry Finston and David Naidech, *462 under which arrangement the parties shared equally in the profits of the business.
In the summer of 1949, approximately 20 years after the death of plaintiff's husband, plaintiff's children remonstrated with her concerning her announced intentions of marrying Louis Eisenberg, and unsuccessfully tried to dissuade her. Finally, plaintiff agreed to convey her real property to her two children, Ida Finston and David Naidech, and the business to Henry Finston and David Naidech, for a consideration of $10,000. There is testimony that one of the reasons therefor was to prevent her proposed husband from obtaining an interest in the property upon their marriage.
Thereafter, Henry Finston and David Naidech operated the business as partners until Henry became dissatisfied with the manner in which David was conducting himself and his failure to assume his proper share of responsibility. In August, 1950, Henry demanded a dissolution of their partnership, which was followed by efforts to settle the breach between them with the aid of counsel. No satisfactory settlement was reached. Thereupon, the plaintiff instituted this action to set aside the transfers of title of October 24, 1949.
The Chancery Division found in favor of the defendants and against the plaintiff on the matter of the validity and propriety of the documents under contest. Plaintiff appeals from the ensuing judgment. There were issues decided between the defendants on cross-claim and counterclaim which will not be discussed here, because they do not form a part of this appeal nor are they material to it.
Plaintiff contends that the deed and bill of sale should be set aside; that undue influence was exerted upon her by persons in confidential relationship to her; that she did not have independent advice of counsel; that she lacked a thorough understanding of the effect and consequences of her acts, and that the transaction was an improvident one.
Defendants, Henry and Ida Finston, deny the contentions of the plaintiff and assert that there was no error in the trial court's determination; that the transaction was fair *463 and fully understood and was made in accordance with plaintiff's expressed intention and for valuable consideration; that the action was not instituted in good faith, but is a belated and fraudulent scheme to deprive them of their property, when plaintiff's son, David, was found to have been embezzling monies from the partnership of Finston and Naidech. Defendants, David and Frances Naidech, have not participated in this action; hence all reference to the defendants shall be considered to apply to the Finstons except where specifically designated to the contrary.
Succinctly stated, we find that the issues involved in this appeal to be: (1) Was there a relationship between the defendants and the plaintiff which placed them in a dominant position over her in effectuating the transfers; (2) did the plaintiff fully understand the purport and effect of the transaction; (3) was there adequate consideration; and (4) did the plaintiff have independent advice.
Initially then, we must determine whether the defendants exercised a dominant influence over plaintiff in effecting the transfers. Generally, where such a transfer has been made, it is voidable at the instance of the transferor if there was any deception, any undue influence, any coercion, or if the transaction was not thoroughly understood by the transferor. In such cases there is a rebuttable presumption on all these points adverse to the transferee and it becomes his duty to overcome the presumption by a preponderance of the evidence. In re Fulper's Estate, 99 N.J. Eq. 293 (Prerog. 1926). However, the mere existence of a confidential relationship between grantor and grantee does not necessarily establish undue influence invalidating a deed, nor render it void or voidable where the sale is open, honest and fair; nor is it a sufficient ground to set aside the transaction that a mutual confidence in business relations and general friendship existed at the time of its execution, where it does not appear that the consideration was inadequate or that there was undue influence over or want of capacity on the part of the grantor. 26 C.J.S., Deeds, § 63, at p. 296. Nor do *464 family ties necessarily create such a confidential relationship that a conveyance between relatives will be invalidated merely because of their consanguinity, where there is not sufficient proof to establish dominance by the grantee over the grantor or any showing of undue influence. 26 C.J.S., supra.
"`The law permits anyone to dispose of his property gratuitously, if he pleases, provided the rights of creditors are not injuriously affected thereby. He may, if he sees fit, reserve to himself the right to revoke his gift, or, if he desires, he may make the gift absolute and irrevocable, and his power in this regard does not depend upon the providence or improvidence of his act.' James v. Aller, 68 N.J. Eq. 666; 62 A. 427; Fretz v. Roth, 70 N.J. Eq. 764; 64 A. 152." Campana v. Angelini, 132 N.J. Eq. 285 (Ch. 1942), at p. 287.
If it appears that the donee was not the dominant party in the relationship, then the presumption is in favor of the validity of the gift and the complainant has the burden of proving circumstances which make it voidable. Seylaz v. Bennett, 5 N.J. 168, 173 (1950). Cf. Blake v. Brennan, 1 N.J. Super. 446 (Ch. Div. 1948), where it was stated: "* * * the test is whether the relations between the parties were of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other and that consequently they did not deal on terms and conditions of equality. The burden of proving the existence of such a confidential relationship rests upon the party who asserts it"; otherwise, "* * * there must be some proof of actual fraud in order to nullify the transfers."
Our review of the record indicates that while plaintiff was suffering from diabetes, she was not in such a critical or incapacitated condition that her activities were impaired or her mind affected. In response to questions propounded to her, the plaintiff testified that while she argued about her proposed remarriage, she was independent and unafraid of defendants and made her own decisions and did as she pleased. We conclude that the proofs do not support the plaintiff's contention that she was dominated by the defendants nor that she was subservient to them, but, on the contrary, *465 she was merely the object of their solicitous arguments on the subject of remarriage at an advanced age, and that her actions leading up to and consummated by the questioned transfers were the result of her own free will and independent determination and not the result of any undue influence or fraud perpetrated upon her by the defendants. Blake v. Brennan, supra.
With respect to the question of her fully understanding the purpose and consequences involved in the transfers, we advert to the testimony of Mr. Slaff, that he had prepared the instruments subsequent to visitations by the plaintiff to his office  not in the presence of the defendants  in accordance with the plaintiff's instructions; that on the date of the execution thereof he presented the instruments to her, summarized their contents and thereupon she executed same; that at the time she was very alert and understood the effect of the transfers. Mr. Nugent A. Freeman, a real estate broker who handled the sale of her home, which occurred subsequent to the transactions in question, testified that in his opinion she was mentally alert and a person of business competence. There was also proof justifying a finding that she knew of the partnership agreement between Henry Finston and David Naidech for the operation of the business after the transfers and that her interest therein was terminated. We think the proofs here meet the test set forth in Campana v. Angelini, supra, at p. 289, holding:
"The test of mental capacity to make a deed is that a person shall have ability to understand, in a reasonable manner, the nature and effect of the act in which he is engaged and the business he is transacting."
The plaintiff obviously did not have competent independent advice, which, under certain circumstances, is primarily essential to inform one accurately concerning the legal effect of such a transfer. Alpaugh v. Alpaugh, 135 N.J. Eq. 200 (Ch. 1944); Miller v. Miller, 138 N.J. Eq. 225 (E. & A. 1946); Vanderbach v. Vollinger, 1 N.J. 481, *466 489 (1949). However, the opportunity for, and the necessity of, independent advice, it has been held, is of less importance where the grantor is not dominated by or servient to the grantee. Seylaz v. Bennett, supra. Independent advice is not a prerequisite to the validity of an improvident gift, even though relationship between parties is one of trust and confidence, where there is no evidence that the donor is dependent or servient to a donee. Seylaz v. Bennett, supra. We are satisfied that the plaintiff fully understood the transactions and, in the absence of proof that there was any dominant relationship or acts of fraud or undue influence committed upon her, her failure to receive competent independent advice does not warrant the voiding of the transactions.
We find that this transaction was of such a nature that it did not impoverish the plaintiff or strip her of all her assets and leave her without means of support. There is testimony to the effect that plaintiff owned a house in New Jersey, which she later sold; now owns a rooming house in New York from which she derives income, and has several savings accounts in New York banks, over which she has dominion and control. It is interesting to note that these accounts were opened several months after the conveyance in question.
In considering the matter of adequacy of consideration, we find that prior to the transfer in question the business had been operated by the defendants, and that plaintiff's only apparent participation was in the profits; that following a discussion, the sale price of $10,000 for her share of the business was mutually agreed upon. Henry Finston borrowed sufficient funds to provide the required consideration of $10,000; that she was well aware of the fact that she received, without protest, $10,000 at the time of settlement, the return of which was never proffered to the defendants, and in addition thereto, a separate check for $300 in final settlement of arrearages of her allotment of profits. Two expert witnesses produced by defendants testified that the *467 real estate had an estimated value of between $25,000 and $30,000. In opposition thereto, plaintiff offered witnesses who were not qualified as experts, testifying that the business was worth in excess of $50,000. A financial statement issued to a supplier in the trade, which statement appears to have been prepared under the direction of Henry Finston, shows the net worth of the business to be $65,215.15. Under all of the circumstances, we do not think that the consideration of $10,000, as an independent factor, was so inadequate as to warrant the setting aside of the transactions.
The judgment of the Superior Court, Chancery Division, is affirmed.