GIUSEPPE GRAZIANO *vs.* FRANCISCO GRAZIANO *et al.*

DECEMBER 18, 1953.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J. This bill in equity was brought by the complainant against one of his sons and the latter's wife to set aside a certain conveyance of real estate made by complainant and his wife to the respondents as joint tenants. After a hearing in the superior court on bill, answer and proof, the trial justice entered a decree denying and dismissing the bill, and from the entry of that decree complainant has duly prosecuted an appeal to this court.

In his bill complainant alleged as ground for the relief sought that fraud had been practiced upon him and his wife by respondents. The trial justice ruled that under the provisions of public laws 1940, chapter 934, complainant could rely on constructive fraud as well as on actual fraud and also on his contention that a fiduciary relationship existed between complainant and his son, which required the latter to procure independent advice for his father and mother when the conveyance in question was made. Evidence was admitted on all these issues and complainant cannot justifiably claim that he was prevented from presenting his entire case. In fact the hearing in the superior court was lengthy and comprehensive. However, before us complainant's brief is devoted chiefly to the point that he did not have independent advice when the transaction between him and his son was consummated.

The conveyance in issue was made July 5, 1947 and included several vacant lots and also a parcel of land on Devonshire street in the city of Providence containing a two-tenement house. In order to show in a general way the

background of the parties and to understand what led up to and brought about that conveyance, a reference to certain matters appearing in evidence seems necessary. The complainant, a bricklayer and mason, came to this country from Italy in 1914. He married and had three children, the respondent Francisco, another son Anthony, and a married daughter who was living in California in 1947. He also had a so-called adopted daughter.

The complainant purchased a number of lots on Devonshire street in 1919 and 1920, and in 1922 he erected thereon a one-family house in which he and his family lived. Later this house was made into two tenements. In 1934 Francisco married and he and his wife Carmella continued to live with his parents. In 1942 complainant and his wife conveyed the house and all their real estate to Francisco reserving to themselves a life estate therein. Shortly after this date the adopted daughter and her husband instituted certain proceedings respecting a part of the property conveyed. See *Monti* v. *Graziano,* 71 R. I. 393.

The respondent Francisco lived with and supported his parents in the property on Devonshire street until early in 1946 when a disagreement arose concerning an insurance policy thereon. The complainant demanded that the property be reconveyed to him and he employed an attorney to represent him. Francisco agreed to reconvey on condition that he be reimbursed for certain improvements which he had made to the property and for legal expenses. Accordingly on May 29, 1946 the above arrangement was carried out, the complainant receiving a reconveyance and Francisco being paid $700. In the meantime the latter and his wife on April 26, 1946 had purchased a house in Cranston into which they moved on May 14 of that year. Thereafter the other son Anthony and his wife moved into the Devonshire street property and lived there with his parents. In July 1946 complainant suffered a shock which paralyzed one side but apparently did not seriously affect his mental capacity.

About February 1947 it came to respondents' notice that complainant and his wife were in need of food and care. Friendly relations between them were resumed and in April, at complainant's request, he and his wife, both of whom complained of the treatment they were receiving from their son Anthony, were taken into respondents' home in Cranston. However, not long thereafter complainant desired to return to his own property on Devonshire street and he persuaded respondents to agree to go back there and live with him, stating in substance that if they would sell their house in Cranston he would convey his own property to them.

In order to carry out this arrangement it was necessary to evict Anthony and his wife from the Devonshire street property since they would not voluntarily vacate it. In the meantime an attorney was consulted by Francisco and the deed now in question was drawn and executed July 5, 1947. However, it was not recorded until January 22, 1948 in order that ejectment proceedings might be brought in the name of complainant and his wife. These were started in the district court August 12, 1947 by an attorney representing and employed by complainant. A decision for possession and costs was entered September 3 of that year but Anthony did not vacate the premises until September 8, 1948.

Prior to this last-mentioned date, complainant's wife Maria, who was seventy-three years old, became ill and she was cared for by Francisco's wife. On October 15, 1947 Maria died and the greater part of her funeral expenses was paid by Francisco. Eventually in September 1948 respondents sold their house in Cranston and on November 8, 1948 with complainant they moved to the Devonshire street property where they have since lived. The respondents spent about $3,500 of the money they received from the sale of their house in Cranston in repairing and renovating the property on Devonshire street. In the spring of 1949 some difficulty arose in connection with the cutting down of a

tree. This resulted in relations between the parties becoming strained and finally led to the bringing of the instant suit.

There was little or no dispute concerning many of the facts involved, but the evidence relating to the execution of the deed of July 5, 1947 was in conflict. In general it is complainant's contention that he and his wife did not know on the above-mentioned date that they were signing a deed to the Devonshire street property; that he relied and depended on his son Francisco for advice and guidance; that he thought he was signing a paper in connection with ejecting Anthony from that property; that complainant's wife did not understand English and was entirely illiterate; that he could understand the English language only slightly; that the attorney who drew the deed and represented Francisco did not speak Italian; that the transaction was not explained to complainant; that he was then about seventy-five years of age, in poor health, and unable to transact business; and that there was no consideration given for the deed which in the circumstances must be regarded as a gift.

On the other hand respondents maintain that complainant was the dominant member of the family; that the idea of the conveyance originated with him; that they had no desire to sell their home in Cranston and move back to Devonshire street, but that finally they were persuaded to do so in order to satisfy complainant and because he agreed in return to convey the Devonshire street property to them; that they spent about $3,500 of their own money on the last-named property; that the deed was read fully and explained to complainant before it was executed; that he understood it and explained it in Italian to his wife; that after its execution the deed was delivered by each of them individually to respondent Francisco and his wife; that the evidence shows complainant had made mortgages on his property; that he also had previously executed and received deeds; that he was entirely familiar with such matters; and that while physically his health was not good he was mentally sound.

In making his decision the trial justice covered fully the issues raised. In the final decree he found among other things that complainant and his wife understood the terms of the deed of July 5, 1947 and knew what they were signing; that from long experience complainant knew the general effect of a deed; that prior to the execution of the deed in question a sufficient explanation of its contents was made to him so that he understood perfectly how it would affect him and his wife; that the evidence did not sustain the allegations in the bill that respondents obtained the property by fraud or other deceitful means; that there was no fiduciary relationship between complainant and his son Francisco which would have required the latter to get independent advice for his father on the execution of the above deed; and that there was dominance on the part of complainant and serviency on the part of Francisco and his wife.

The following excerpts from the decision of the trial justice show his opinion of complainant's credibility, of his general condition, and of matters connected with the execution of the questioned deed. Speaking of the complainant, the trial justice said: "He is physically disabled, almost totally disabled by reason of that stroke, but he is not mentally disabled by any means. I was astonished at the accuracy with which he was able to give us the dates upon which many of these transactions occurred. He had a very keen conception of the various transactions as they went on from time to time."

After finding that from complainant's long experience in purchases and transfers of real estate he knew the general effect of a deed as well as any layman, the trial justice stated of complainant: "He is a very difficult man to please. * * * he's a very dominant character, and when he sat here and told me that he executed a piece of paper he did not know he was executing a deed, I believe he did not tell me the full and complete truth. I think he did know that he was executing the deed, and I so find as a fact. I think he

understood in general the terms of that deed * * * and that he made a sufficient explanation of it to his wife, Maria, so that she understood it at the same time."

In regard to the relationship between the parties, the trial justice found: "if there was any serviency it was on the part of Frank and Carmella, because this complainant was apparently brought up upon conditions that made him believe that he was master in the house where he lived and in his own family he was certainly master of their own children * * * there was no fiduciary relationship, there was no dominance upon the part of Frank that required him to get independent advice for this complainant."

It is settled that in an equity cause the findings of fact of a trial justice on conflicting evidence are entitled to great weight and will not be set aside unless they clearly fail to do justice between the parties, or he has misconceived or failed to consider material evidence. *Bogdanovich* v. *Bogdanovich,* 77 R. I. 354. In our opinion the credibility of the witnesses is the important and decisive factor in the instant cause. In determining that issue and in passing upon the conflicting evidence the trial justice has an advantage over this court because he has seen and heard the witnesses testify. Upon consideration of the entire record we cannot say that he misconceived or failed to consider any material evidence or that his findings of fact did not do justice between the parties. Such findings therefore will not be disturbed by us.

The complainant, however, also argued that the evidence in this cause shows as a matter of law that a fiduciary relationship existed between him and his son on July 5, 1947 when the deed in question was executed and that complainant should have been furnished with independent advice before that was done. We cannot agree with that contention. This court has recognized the existence of such a rule in *Oldham* v. *Oldham,* 58 R. I. 268, where it was stated at page 281: "This rule is especially applicable in cases of fiduciary rela-

tions where the transfer is voluntary or without adequate consideration and the grantor is dependent for advice or direction on the person who has assumed such relations."

It is clear, however, that the application of that rule must depend on the facts of the particular case before the court. In the instant cause the trial justice has made findings of fact strongly against the complainant on this issue. He specifically found among other things that no fiduciary relationship existed between the parties in the circumstances; that the grantor was the dominant figure in the transaction; that he was not dependent for advice or direction on his son; and that the grantors had full knowledge of what they were doing. In view of these findings, which we have upheld, the above rule which complainant is now seeking to invoke has no application in the present cause. It is our judgment that the situation here resembles to some extent that in *Seylaz* v. *Bennett,* 5 N. J. 168, where the court at page 173 held: "The situation is quite different, however, when there is no evidence that the donor is dependent upon or servient to the donee. In such case, independent advice is not a prerequisite to the validity of an improvident gift even though the relationship between the parties is one of trust and confidence." See also *Eisenberg* v. *Finston,* 18 N. J. Super. 458.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Isidore Kirshenbaum,* for complainant.

*Francis A. Kelleher, Thomas F. Kelleher, John F. O'Connell,* for respondents.