9 N.J. Super. 36 (1950)
74 A.2d 614
ONNIE B. O'NEAL, PLAINTIFF-APPELLANT
v.
ARRE O'NEAL, AS EXECUTOR AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF JOSEPH O'NEAL, DECEASED; CLIFFORD O'NEAL, AN INFANT; AND CORA KING, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1950.
Decided July 17, 1950.
*38 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Julius Wildstein argued the cause for appellant (Mr. David B. Geltzeiler, attorney).
*39 Mr. J. LeRoy Jordan argued the cause for respondents (Mr. Oliver Randolph, attorney).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
This appeal is from a final judgment dismissing the complaint, entered in the Chancery Division of the Superior Court after hearing.
The complaint, filed on November 26, 1948, sought to set aside a deed signed by the plaintiff, by which she conveyed to her brother Joseph O'Neal premises in East Orange, consisting of a lot and three-family dwelling. It alleged that the plaintiff has been very ill since the spring of 1947, and particularly so from March, 1947, to the fall of that year. On a date unknown to her, in the summer of 1947, while she was suffering from a moderately advanced stage of tuberculosis and was in a weakened physical and mental condition, "her brother, Joseph, came to the plaintiff and requested her to sign a paper writing which he falsely represented had something to do with her death, or guardianship of her infant children. Plaintiff, relying on the said representations of her brother, Joseph, and because of her dependence upon him and the trust and confidence reposed in him, and because of her weakened physical and mental condition * * * executed said paper writing." Subsequent to the death of Joseph, which occurred on August 8, 1948, she learned for the first time that the paper writing which she had signed was a deed dated July 8, 1947, conveying the premises to Joseph. The complaint alleged, further, that she understood neither the irrevocable character of her act nor its legal consequences; that the effect of the deed was to impoverish her, and that she did not have the benefit of independent advice but reposed trust and confidence in Joseph because of their confidential relationship. It charged that the instrument was obtained by fraud and was invalid.
The court below found that the property was conveyed to the plaintiff by the Warranty Building and Loan Association, by deed dated June 16, 1945; that the purchase price of the *40 property was paid by Joseph; that from June 16, 1945, when the property was conveyed to the plaintiff, until the death of Joseph, he exercised complete dominion over the property; that a resulting trust arose in favor of Joseph; and that the conveyance by the plaintiff was an acknowledgment that the property belonged to him and by her own act she is estopped from asserting ownership for herself.
The plaintiff argues that the court erred in finding that a resulting trust arose and in failing to find that Joseph made a gift of the premises to the plaintiff. We think the interests of justice require us to make new findings of fact, giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses. Rules 1:2-20, 4:2-6.
The uncontradicted testimony was that Joseph O'Neal came to Newark from Georgia in 1916, became a special policeman, and prospered. He was the oldest and plaintiff the youngest of a family of five brothers and sisters. The plaintiff lost her sight in 1921. Joseph sent money to his father to pay for medical treatment for her and later, in 1921, sent for her to come and live with him in Newark. She received treatment for her eyes in Newark and soon thereafter was able to see, with the aid of glasses. When she came to Newark, Joseph was single and she lived with him, keeping house, taking care of his clothes and cooking for him. In 1934 she moved into her own apartment, where she lived with her twin boys who had been born out of wedlock a few years earlier. From 1934 until she became very ill in May, 1947, she was employed. In May, 1947, she became afflicted with pneumonia and pleurisy, which culminated in tuberculosis of the lungs. She was hospitalized on July 2, 1947, until September 8, 1947, and again on two later occasions.
In 1945 Joseph purchased the property and had the title taken in the name of the plaintiff, subject to a building and loan mortgage of $2,500. The balance of the purchase price, amounting to $1,549, was paid by him. The building and loan savings book was in the name of the plaintiff. She made the monthly payments of $35 to the building and loan and *41 paid the water bills until she entered the hospital in July, 1947. She notified the tenant that she was the owner of the premises and rent must be paid to her. The then tenant paid the rent to her each month and received her receipt therefor until June, 1947. While she was very ill in June, 1947, and under constant medical attention, Joseph told her that he would take care of the rent; thereafter, the tenant paid the rent to Joseph, who gave receipts signed by the plaintiff. When the tenant moved out in July, 1947, Joseph urged her to move in, but she refused. At her suggestion, Joseph moved into the premises and lived there until his death on August 8, 1948. At the time of Joseph's death, Joseph was fifty-two years of age and the plaintiff forty-five years of age.
Joseph was regarded by his brothers and sisters as the head of the family. A very close relationship existed between Joseph and plaintiff and Joseph gave her money and bought her clothes, and continued to contribute money to her after the title to the premises had been placed in her name. Joseph visited her frequently, aided her in disciplining her boys, selected a boarding school for them, and helped her financially in their schooling.
A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise. Restatement, Trusts, N.J. Annot., § 441 (1942). Oral declarations of the payer's intention to make a gift to the transferee are admissible to show that the payer intended that the transferee should have the beneficial interest in the property, and such declarations are admissible whether made before or at the time of or subsequent to the transfer. Restatement, Trusts, N.J. Annot., § 441, Comment b (1942), 3 Scott on Trusts, § 441 (1939 Ed.).
The plaintiff testified that Joseph told her that he was purchasing the property for her because she was working, was not well, and was alone "and had these two boys and all the rest had something but me." This was corroborated *42 by the testimony of three witnesses, two of whom were first cousins of the O'Neals and the other a friend of the family, all of whom testified that Joseph told them that he bought this property for the plaintiff. The fact that, after the purchase and until the time the plaintiff became seriously ill, Joseph exercised no dominion over the property, but permitted the plaintiff to deal with the property as her own, is a circumstance tending to rebut the inference of a resulting trust. The fact that Joseph was prosperous and the plaintiff poor has some tendency to show that a gift was intended. 3 Scott on Trusts, § 441 (1939 Ed.). The only other evidence tending to show Joseph's intention, was the testimony given by a brother and a sister, testifying for defendants, that Joseph told them he had the title put in plaintiff's name so that his estranged wife could not claim any interest in it. The effect of this testimony was weakened by the admission that Joseph, within five months of the date of the transfer to plaintiff, purchased another property and took title in his own name, although no change had occurred in his relations with his estranged wife. But even if we were to accept this testimony as true, no resulting trust would arise. Culley v. Carr, 137 N.J. Eq. 516 (Ch. 1946). We conclude that no resulting trust arose because Joseph manifested an intention to make a gift of the property to the plaintiff.
The remaining question is whether the deed from plaintiff to Joseph should be set aside. It was admitted that Joseph induced the plaintiff to sign the paper writing at a time when she was very ill, that she had no competent and disinterested counsel, that she received no consideration, and that the transfer impoverished her. We think it clear that a confidential relationship existed between Joseph and the plaintiff and that Joseph was the dominant member. Their relationship was described by defendant's witness, Oliver Randolph, a member of the bar, as follows: "He was very fond of Onnie and he had helped her considerably. She had been more in need of help, I think, than the others on account of her health, and he appeared to me to be, even long before this, *43 in business matters and other things, desirous of helping Onnie as much as he could and I think there was a more confidential relationship between him and Onnie than between the others." Under these circumstances, the burden was upon the defendants to show, by clear and convincing proof, that the gift was the voluntary and intelligent act of the donor. Seylaz v. Bennett, 5 N.J. 168 (1950). The defendants failed to bear this burden. We conclude that the plaintiff was unable fully to comprehend the nature and effect of her act and that the deed should be set aside.
The judgment is reversed.