**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1766-17T3

PAMELA DUMCHUS,

    Plaintiff-Respondent,

v.

WILLIAM DUMCHUS,

    Defendant-Appellant.

_____

Submitted October 30, 2018 – Decided February 8, 2019

Before Judges Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0410-11.

Lum, Drasco & Positan, LLC, attorneys for appellant (Gina M. Sorge, of counsel and on the briefs).

LaRocca, Hornik, Rosen, Greenberg & Patti, LLC, attorneys for respondent (Albertina Webb and Gregory L. Grossman, on the brief).

PER CURIAM

In this post-judgment dissolution matter, defendant William Dumchus appeals from the Family Part's November 17, 2017 order enforcing a settlement agreement he and plaintiff Pamela Dumchus reached through voluntary mediation. On appeal, defendant contends that the order was unsupported by the facts in the record and was based upon legal errors, including the motion judge's failure to consider whether the agreement was "fair and just," and the judge reaching the conclusion that "full disclosure of financial information was unnecessary or irrelevant." Defendant also argues that the judge erred by denying his request for a modification of his alimony obligation and failing to direct that the garnishment upon defendant's wages be terminated upon his payment of the agreed upon "lump sum amount" necessary to satisfy his alimony obligation. For the reasons that follow, we affirm in part and remand in part for the limited purpose of terminating the garnishment upon defendant's payment of the agreed upon amount to satisfy his alimony obligation.

The facts derived from the motion record are summarized as follows. The parties were married in 1985. Their marriage ended with the September 9, 2011 entry of a final judgment of divorce (JOD) that incorporated the terms of their "Divorce Settlement Agreement" (DSA). The DSA required defendant to pay $7500 per month in permanent alimony through wage garnishment. It provided

for termination of alimony upon "the death of either party" or plaintiff's "remarriage or cohabitation . . . ." Defendant was also required to maintain life insurance in the amount of $1,000,000 for plaintiff's benefit to secure his alimony obligation. Finally, the DSA required the parties to attempt to resolve any disputes "by negotiation and agreement before using the court for any determination."

A dispute arose between the parties regarding defendant's failure to pay alimony. In an effort to resolve that dispute, and at defendant's request, the parties and their attorneys participated in a mediation with an agreed upon mediator. The mediation was successful and on August 10, 2017, the parties entered into a written agreement (mediation agreement) that by its express terms was a "full and final settlement" of their dispute. The mediation agreement provided that except as addressed in the agreement, the terms of the DSA remained in "full force and effect."

The mediation agreement required defendant to pay to plaintiff within ten days a lump sum of $500,000 "tax free" in full satisfaction of his prospective alimony obligation under the DSA. Plaintiff agreed to accept that amount in satisfaction of defendant's $90,000 per year obligation going forward and to waive any claim she had to the "approximately $16,000 in alimony arrearages"

A-1766-17T3

that existed at that time. The mediation agreement also required defendant to maintain $250,000 in life insurance for plaintiff's benefit even though his alimony terminated upon payment of the lump sum.

When defendant did not make the lump sum payment, in October 2017, plaintiff filed a motion to enforce the mediation agreement and defendant cross-moved to vacate the agreement and modify or terminate his alimony obligation under the DSA, or for the judge to schedule a plenary hearing. In her supporting certification, plaintiff explained that shortly after the parties entered the mediation agreement, defendant obtained new counsel and sought to modify the agreement. Plaintiff rejected defendant's proposal to enter into negotiations about the mediation agreement that they had just entered into in August. She noted that defendant benefited under the mediation agreement by her giving up the right to $90,000 per year in permanent alimony in exchange for the $500,000 one-time payment.

In his certification, defendant explained that in 2014 he changed positions and was currently employed as a "branch investment manager at Morgan Stanley," and since 2015, his compensation that was primarily paid through bonuses had declined. He also described health issues he began to encounter in 2015, which he stated "impacted [his] ability to work." As a result, he could not

A-1766-17T3

satisfy his alimony obligation, so the parties decided to mediate "the issues of alimony and consideration of modification and reduction, if not termination, of [his D]SA alimony obligations." However, the parties never exchanged financial information prior to the mediation, but "[i]t was clear [his] total earnings were insufficient to meet the $7500 monthly garnishment."

Defendant stated that despite plaintiff's arguments to the contrary, he paid almost all of his alimony obligation for each year since the divorce and that in any event, the mediation agreement did not provide him with any benefit going forward and was entered into without knowledge of important information. He stated the following:

> The [mediation agreement] was not subject to consideration of the total alimony payments that I had made to date or consideration of my remaining obligations in accordance with the [D]SA. Paragraph 4(A) of the [D]SA states my obligation to "secure [my] alimony obligation" by maintaining a life insurance policy in the face amount of $1,000,000 naming [plaintiff] as a sole beneficiary. On August 10, 2017, my alimony payments exceeded $516,000. As of September 15, 2017, I paid some $532,000, approximately $8100 short of fulfilling my six (6) year total alimony payment obligation of $540,000. My execution of the [D]SA was without consideration of a remaining [D]SA alimony payment obligation of approximately $460,000. When I signed the [mediation agreement], I was also unaware of the advice I subsequently received from my counsel with regard to changes to the law governing alimony in September of

2014, including consideration of "retirement" and the termination of alimony upon reaching the age of 67. Notably, my [D]SA alimony obligations through age 67, total $1,000,000.

Based on those reasons, defendant asked that the court not enforce the mediation agreement. He also asked that his alimony be reduced because of his reduction in earnings, which he described as having been approximately $500,000 in 2015, $432,000 in 2016 and, including disability payments, $418,000 in 2017. He claimed that these amounts did not take into account the payments he made to "Morgan Stanley in accordance with the promissory notes above and beyond the substantial sums withheld from [his] earnings for Federal and State taxes." According to defendant, after deducting these payments, his net income for 2017 was $34,650.26. He also revealed that he had $27,000 in unearned income and his monthly expenses including alimony were approximately $15,000.

Plaintiff filed a reply certification in which she argued that defendant was ultimately seeking "a second bite [at] the apple" with regard to the matters the parties resolved through the DSA and mediation agreement. She noted that neither party asked for any documentation and entered into the agreement with the advice of counsel without any exchange of information. Moreover, disclosure would not have made a difference since it was only defendant's

income that was at issue and he was fully aware of his situation when he entered into the mediation agreement.

Plaintiff also challenged defendant's claims about the decline in his income. She stated that during the marriage he earned approximately $350,000 annually, which supported both of their lifestyles. Further, as to claims about his medical condition, plaintiff observed that defendant did not attach any confirming medical records or reports.

In accordance with Rule 5:5-4(e), the motion judge issued a tentative decision and order on November 14, 2017, granting plaintiff's motion and denying defendant's cross-motion. The parties reviewed the order and withdrew their request for oral argument, and the judge entered the order on November 17, 2017.

The motion judge set forth his findings of fact and conclusions of law within the body of the order. The judge found that the parties voluntarily participated in mediation at defendant's request with independent counsel. Relying upon the Supreme Court's holdings in Nolan v. Lee Ho, 120 N.J. 465, 473 (1990) and Willingboro Mall, Ltd. v. 240/242 Franklin Ave., LLC, 215 N.J. 242, 256 (2013), he stated that in the absence of "fraud or compelling circumstances," where the parties have complied with Rule 1:40-4(i) regarding

7

settlement agreements, the mediation agreement must be "honored."  Citing to Konzelman v. Konzelman, 158 N.J. 185, 193 (1999) and Weishaus v. Weishaus, 180 N.J. 131, 143 (2004), the judge observed that settlement agreements in divorce matters are "particularly favored," and quoting from Puder v. Buechel, 183 N.J. 428, 427 (2005), he explained that "the settlement of litigation ranks high in the public policy of this state."

The motion judge found that the language employed by the parties in the mediation agreement established that it was their intention to be bound by the mediation agreement "as an addendum/modification to their DSA."  He therefore incorporated its terms into the JOD, making it "enforceable as an Order of the Court."

The judge characterized defendant's cross-motion as an attempt to "renege on a signed agreement entered into in mediation, which took place at [defendant's] request[, even though t]he intent of the parties could not be any clearer."  The judge determined that defendant failed to establish that there was anything unconscionable about the agreement or that anything happened since they entered into it that would make the agreement unconscionable or establish an inability to perform its terms.  The judge noted that defendant's disclosures of his assets revealed an account with the funds necessary to make the agreed

upon lump sum payment to plaintiff. To the extent defendant claimed he was deprived of any information necessary to his entry into the mediation agreement, the judge observed that defendant was solely in possession of the information he needed about his income and assets and whether it was a wise decision to agree to those terms.

Notably, the judge observed that the parties did not formulate through mediation a modification of the DSA's alimony amount, but rather a buyout of the DSA's alimony that would be acceptable to all parties. Addressing defendant's arguments about his remaining alimony obligation under the DSA being limited to the date he turned sixty-seven, the judge found them to be "pure speculation" as the DSA provided for permanent alimony and any termination would be "fact sensitive under the alimony statute[,] N.J.S.A. 2A:34-23(c)."

Because the judge was satisfied that the mediation agreement should be enforced, he did not address whether defendant established a prima facie showing of changed circumstances under Lepis v. Lepis, 83 N.J. 139, 157 (1980). Also, the motion judge concluded there was no need for a plenary hearing as there were no "genuine issues as to a material fact" that required a resolution through a hearing as contemplated by Harrington v. Harrington, 281

N.J. Super. 39 (App. Div. 1995), and there was no reason to refer the parties for additional mediation. This appeal followed.

We begin by acknowledging that "we accord great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). Because of the Family Part's expertise in family matters, our review of a Family Part judge's fact-findings is limited. See N.J. Div. of Youth & Family Servs. v. T.S., 429 N.J. Super. 202, 216 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)); N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010).

We generally defer to factual findings made by a trial court when such findings are supported by adequate, substantial, and credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015). Accordingly, we will only reverse a trial court's factual findings when they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). In contrast, "trial judge[s'] legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review."

Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Applying our deferential standard of review, we conclude that defendant's arguments on appeal challenging the enforcement of the mediation agreement are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the motion judge in his thorough statement of reasons incorporated into the order under appeal.

We are constrained, however, to remand the matter for the limited purpose of having the judge enter an order that provides, upon the date defendant pays the agreed to lump sum amount in full, the garnishment terminates, and the $16,000 in arrears is vacated. Defendant is also to receive an appropriate credit for payments, if any, made through the garnishment after he has made the lump sum payment.

Affirmed in part; remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1766-17T3